San Juan Dock Co., demandante y apelada, *v.* Manuel V. Domenech, Tesorero de Puerto Rico, sustituído en apelación por Rafael Sancho Bonet, demandado y apelante.

Núm. 7012.—*Sometido:* Noviembre 17, 1936. *Resuelto:* Julio 24, 1937.

*Hon. Procurador General B. Fernández García (Benjamin J. Horton en el alegato) y Luis Janer, Fiscal Auxiliar del Tribunal Supremo, abogados del apelante; Orlando J. Antonsanti, abogado de la apelada.*

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

La peticionaria y apelada radicó una solicitud de *mandamus* para obligar al Tesorero a que le expidiera recibo por las contribuciones correspondientes al segundo semestre de 1933–34. La Corte de Distrito de San Juan en su sentencia así lo ordenó. Las partes han radicado una estipulación de hechos que procedemos a copiar en su mayor parte:

"Comparecen ambas partes ante esta Hon. Corte por conducto de sus abogados y estipulan que los siguientes son los hechos tal como ocurrieron en el presente caso.

"Primero: Que allá para el día 19 de septiembre de 1932, la San Juan Dock Company, Inc., expidió un cheque certificado número 99 a favor del Tesorero de Puerto Rico y contra el Banco Territorial y Agrícola por la suma de quinientos noventa y cuatro pesos con sesenta y seis centavos (594.66) para pagar las contribuciones sobre la propiedad de la peticionaria correspondientes al primer semestre, recibo 448, de 1932–1933.

"Segundo: Que el cheque arriba mencionado fué recibido (el día 19 ó 23 de septiembre de 1932. La peticionaria alega que fué el 19 de septiembre y el querellado que fué el 23 del mismo mes) por Juan Betancourt, Oficial Encargado de Asuntos Financieros del Departamento de Hacienda, el cual le hizo constar al Sr. Portocarrero (el empleado de la peticionaria que entregó dicho cheque) que los recibos por el primer semestre de las contribuciones sobre la propiedad, o sea el recibo 448, aún no estaba listo y por esa razón no lo expidió.

"Tercero: Que dicho cheque número 99 estuvo bajo el poder del Sr. Betancourt desde la fecha de su entrega (19 ó 23 de septiembre de 1932) hasta el 3 de octubre de 1932, sin que el Tesorero de Puerto Rico lo presentara para su cobro.

"Cuarto: Que el Tesorero de Puerto Rico no cobró dicho cheque por creer que las contribuciones aun no estaban impuestas por no estar listos los recibos.

"Quinto: Que durante el período que el referido cheque obraba en poder del Sr. Betancourt, el Banco Territorial y Agrícola de Puerto Rico cerró sus puertas y fué puesto bajo Administración Judicial, por la Corte de Distrito de San Juan, el día 29 de septiembre de 1932.

"Sexto: Que el día 3 de octubre el Departamento de Hacienda, por carta firmada por J. E. Rosario, devolvió dicho cheque número 99 a la peticionaria, cuya carta se adhiere marcada *Exhibit* A, y se hace formar parte de esta estipulación.

"Séptimo: Que desde la fecha de la carta arriba mencionada, entre las partes se han cruzado varias cartas tratando sobre este asunto las cuales se adhieren y se hacen formar parte de esta estipulación, como sigue: Desde *Exhibit* A hasta *Exhibit* N consecutivamente.

"Octavo: Que al cumplirse el término en el cual se habían de pagar las contribuciones del segundo semestre del año económico 1932–1933, recibo 448 segundo semestre, o sea, en el mes de abril, la peticionaria envió por carta un cheque certificado número 142 por

quinientos quince dólares con treinta y seis centavos ($515.36) al Colector de Corporaciones del Departamento de Hacienda para pagar dichas contribuciones. Que dicho cheque fué recibido y su importe cobrado, en abril 1933 y puesto en depósito especial, pero el recibo correspondiente acreditando su pago no fué expedido, alegando para no hacerlo el Tesorero que no lo aplicaría hasta no estar cubierto el recibo por el semestre anterior.

"Noveno: Que al cumplirse el término en el cual se habían de pagar las contribuciones del primer semestre del año económico de 1933–1934, recibo 498, la peticionaria entregó un cheque certificado por la suma de $466.80 al Colector de Corporaciones arriba mencionado para pagar dichas contribuciones, por el cual expidieron el recibo número 498. (De paso este Tribunal llama la atención hacia el hecho de que de los cuatro pagos efectuados por la San Juan Dock Co., éste fué el único recibido por el Tesorero y por el cual se libró recibo en la forma solicitada por la contribuyente.)

"Décimo: Que al cumplirse el término en el cual se habían de pagar las contribuciones sobre la propiedad del segundo semestre del año económico 1933–1934, recibo 498, la peticionaria entregó un cheque certificado al Colector de Corporaciones por la suma de $471.47, para pagar dichas contribuciones. Que este cheque iba enviado por carta en la cual se hacía constar con qué objeto fué expedido dicho cheque (Véase *Exhibit* L.) Que a pesar de haber recibido y cobrado dicho cheque el Tesorero no lo aplicó a la imputación de pago que le hizo la peticionaria, pero contrario a sus instrucciones, informó a la peticionaria por carta (*Exhibit* M) que había embargado este cheque y aplicado al pago de otros recibos que constan en *Exhibit* M.

"Undécimo: Que el Tesorero cobró dicho cheque por la suma de $471.47 en abril de 1934 y lo aplicó junto con el importe del cheque número 142 por $515.36 que obraba en un depósito especial, el día 7 de mayo de 1934, para responder de una parte de las contribuciones (que según el Tesorero alega) la peticionaria adeudaba al Pueblo de Puerto Rico. (*Exhibit* M.)

"Duodécimo: Que por carta 9 de agosto de 1934 (Exhibit N) la peticionaria devolvió ál Tesorero los recibos 448 primer semestre 1932–1933 y 448 segundo semestre 1932–1933."

Así pues, se desprende que el 12 de enero, 1934, la San Juan Dock Company libró a favor del Tesorero un cheque

certificado por contribuciones *ad valorem* correspondientes al segundo semestre de 1933-34 por la suma de $471.47 y que la Corte de Distrito de San Juan ordenó la expedición del recibo. Por carta se hizo constar que el referido cheque cubriera específicamente el pago de $471.47 para èl segundo semestre de 1933-34. El Tesorero aceptó el aludido cheque certificado, mas se negó a expedir el recibo núm. 498, embargó el importe de dicho cheque y en unión del depósito especial correspondiente al segundo semestre de 1932-33, los aplicó o trató de aplicarlos a las contribuciones para los semestres primero y segundo de 1932-33.

La defensa del Tesorero al no aceptar el cheque en la forma en que se había librado o imputado por el contribuyente para el segundo semestre 1933-34, fué que el Tesorero había embargado la suma de $970.38 para las contribuciones correspondientes al primer y segundo semestres de 1932. Ahora, como se desprendía que el Tesorero aceptó sin objeción o protesta de clase alguna el cheque para el primer semestre de 1933-34, aparecería que él podía y, a nuestro juicio, debió aceptar independientemente de igual modo el cheque por la suma adeudada por el segundo semestre de 1933-34.

Permítasenos decir inmediatamente que si el Tesorero hubiera aceptado las contribuciones para el primer semestre de 1932-33, no hubiese surgido aparentemente cuestión alguna. Sin embargo, el 19 ó 23 de septiembre, 1932, el Tesorero o más bien su agente Betancourt, recibió de la peticionaria dicho cheque núm. 99, en pago del primer semestre de 1932-33. El cheque, conforme hemos visto, fué expedido contra el Banco Territorial y Agrícola. Betancourt, el supuesto agente del Tesorero, declaró que se negó a expedir el recibo porque los certificados o recibos correspondientes al primer semestre de 1932-33, como con frecuencia ocurre, no estaban listos. El referido cheque certificado núm. 99 continuó en posesión de Betancourt, el supuesto agente del

Tesorero (conforme hallamos que en realidad era), hasta el 3 de octubre, 1932. En 29 de septiembre del mismo año el Banco Territorial y Agrícola quebró. El Tesorero devolvió el cheque en cuestión a la peticionaria en 3 de octubre, 1932.

No tenemos dudas de que las contribuciones para el primer semestre de 1932–33 vencieron el primero de julio, 1932. Las contribuciones son impuestas para el año fiscal. Así lo fueron en este caso, o sea, de julio, 1932, a junio, 1933. Creemos que esto de por sí es evidente. El hecho de que el Tesorero no estuviera en condiciones de expedir un recibo formal, impide, según sabemos, que surja una penalidad, mas el contribuyente tiene derecho a pagar sus contribuciones. Lo que el Tesorero manifestó fué tal vez una excusa, mas no una razón.

La cuestión más seria que está ante nuestra consideración es si el cheque certificado equivalió a un pago. Nada hallamos en las leyes de Puerto Rico que prohiba que las contribuciones sean pagadas mediante cheques certificados. Todos sabemos que es costumbre o práctica del Tesorero de Puerto Rico aceptar los mismos al ser librados. Si él no está preparado para considerar el cheque como pago, debe así indicarlo al contribuyente que lo presenta. El Tesorero en este caso, por mediación de su agente Betancourt, aceptó el mismo y estaba en su consecuencia obligado a presentarlo para su pago. La excusa para no expedir el recibo inmediatamente pudo o no haber sido buena, pero en nuestra opinión no relevó al Tesorero de presentar el cheque para su pago dentro de un tiempo razonable. Estamos al tanto de la jurisprudencia y aun de algunos estatutos, de otros lugares, donde no se acepta otra cosa que dinero en efectivo como pago, mas esos casos no son aplicables a Puerto Rico ni a las condiciones que surgieron en éste.

Entre otras cosas, la Ley Uniforme de Instrumentos Negociables dispone que los cheques deben ser presentados den-

tro de un tiempo razonable y las autoridades tienden a sostener que el período de tiempo bajo las condiciones en que este cheque se retuvo no es un término razonable.

El Tesorero sostiene que la Ley Uniforme de Instrumentos Negociables no es aplicable, puesto que las contribuciones no son deudas. En primer lugar, cuando se expiden y aceptan cheques certificados, surgiría un contrato similar a cuando se trata de otra clase de cheques, y la misma regla es aplicable.

■ Además somos del criterio de que las contribuciones en Puerto Rico son deudas del contribuyente, que la ley le exige que pague sin que se le haga requerimiento para ello.

■ ▌Aunque la cuestión no fué discutida por la corte inferior, nos inclinamos fuertemente al criterio de que un contribuyente, aunque adeude contribuciones atrasadas, tiene derecho a señalar determinada contribución a la cual desea imputar el pago y en su consecuencia obtener directa o finalmente el recibo de esa contribución. Uno de los casos más salientes es aquél en que una persona acepta el arrendamiento de una finca y promete pagar las contribuciones futuras. Para no violar el contrato estaría obligada a pagarlas y evidentemente el arrendatario nada tendría que ver con las contribuciones atrasadas.

■ Surge alguna duda respecto a si el recurso de *mandamus* es el adecuado. Una vez que el hecho del pago quedó establecido mediante prueba y su legalidad resultaba indubitada, el deber del Tesorero de expedir el recibo quedó claramente fijado por la ley y era ministerial. Estamos seguros que el recurso del pago bajo protesta, de ser aplicable, no era exclusivo del remedio escogido.

*La sentencia debe ser confirmada.*

Los Jueces Señores Presidente Del Toro y Asociado Córdova Dávila, no intervinieron.