ADRIÁN CABALLERO, peticionario, *v.* TRIBUNAL SUPERIOR, SALA DE PONCE, HON. HÉCTOR RUIZ SOMOHANO, JUEZ, demandado.

Número 2100.

*Sometido:* 11 de diciembre de 1957. *Resuelto:* 28 de abril de 1960.

*S. L. Lagarde Garcés,* abogado del peticionario; *Hon. Secretario de Justicia Hiram R. Cancio (J. B. Fernández Badillo, Secretario interino de Justicia, Rafael L. Ydrach Yordán*

y *Ramón Olivo Nieves, Fiscal* y *Fiscal Especial del Tribunal Supremo,* respectivamente, en el alegato), abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

El 30 de marzo de 1953 un fiscal especial general formuló denuncia contra el peticionario Adrián Caballero en el Tribunal de Distrito, Sala de Ponce, (¹) imputándole la comisión de una infracción a la Ley núm. 26 aprobada el 25 de abril de 1934, que castiga la emisión o entrega de cheques sin fondos suficientes o un crédito para su pago. 33 L.P.R.A. secs. 1851–56.

El juicio fue celebrado el 7 de julio de 1953. Estuvo representado El Pueblo por un fiscal y Caballero por su abogado. Como defensas éste adujo: (*a*) Que al emitir el cheque y remitirlo por correo a Gerardino no tuvo el propósito de defraudarlo; (*b*) que lo emitió para efectuar el pago de una deuda preexistente; (*c*) que su presentación al banco librado no se hizo dentro de un término razonable, y (*d*) que tanto al ser requerido o avisado por el tomador para su pago, como al ser denunciado, estaba sometido a un procedimiento de quiebra e impedido de hacer pagos fuera del procedimiento para satisfacer sus deudas.

La prueba oral de El Pueblo consistió en el testimonio de Gerardino. La documental, en el original del cheque que

---

(¹) El cheque fue librado en Caguas, aparentemente el 3 de abril de 1952, contra un banco de esa ciudad y remitido desde allí por correo a la residencia de su tomador, Julio E. Gerardino, Yauco, Puerto Rico. Fue presentado para su pago a dicho banco de Caguas, que rehusó pagarlo por falta de fondos. La competencia ordinaria para conocer del caso correspondía a la Sala de Caguas del Tribunal Municipal, hasta el 25 de julio de 1952, y luego a la Sala de Caguas del Tribunal de Distrito, puesto que en tales casos se entiende cometido el delito en el lugar desde el cual se remite el cheque por correo. *People* v. *Megladdery* (1940) 105 P. 2d 385, 40 C.A. 2d 643; Artículo 8, Cód. de Enjuiciamiento Criminal; véase "Procedimiento Criminal Bajo un Sistema Unificado de Cortes", por Rafael Hernández Colón, Revista Jurídica de la Universidad de Puerto Rico, Vol. XXVII, págs. 335, 344 y ss., 1957–58.

tiene adherido un volante del Banco de Ponce, Sucursal de Caguas que indica el motivo para rehusar su pago y una carta fechada el 5 de diciembre de 1952, requiriendo a Caballero para el pago del cheque.

Después de haber declarado Gerardino, se estipuló lo siguiente:

"... se estipula por el Lcdo. Lagarde y el Fiscal Veray, que el cheque No. 45 *fue debidamente presentado al Banco de Ponce,* Sucursal de Caguas, y que este cheque en mayo 5 de 1952, sic, y *no tenía fondos el girador por lo que no pudo ser pagado* y que no ha sido pagado en ningún otro momento por el acusado en este caso, Adrián Caballero, que no ha sido honrado el cheque; *y que Adrián Caballero ni para esa fecha ni en ninguna fecha posterior ha tenido fondos* para cubrir ese cheque."(²)
—Énfasis suplido.

La prueba oral de la defensa consistió en la declaración del propio denunciado Adrián Caballero. La documental, en copia de una carta fechada el 25 de marzo de 1952, la factura de compra, copia al carbón de una carta firmada por Isidoro Delgado y una certificación librada por el juez de quiebras, W. H. Beckerleg.

---

(²) El texto del cheque es el siguiente:

"Abril 3, 1952—Núm. 45.
"Banco de Ponce
Caguas, Puerto Rico

"Páguese a la orden de Julio E. Gerardino....$563.65 Quinientos sesenta y tres con 65/100....dólares

"(Fdo)   Adrián Caballero."   .

A su margen izquierdo dice: "Saldo Fact. No. 146–15." Al dorso tiene estampado un sello de goma, que lee: "For deposit on the account of Julio E. Gerardino (J. E. Gerardino) Yauco, P. R." Tiene, además, cuatro sellos de goma estampados por el banco Crédito y Ahorro Ponceño, Sucursal de Yauco, fechados, respectivamente, en los días 4, 10, 10 y 30 de abril de 1952, y cruzando cada uno de estos cuatro sellos, hay marcados otros cuatro sellos de goma que dicen: "Endoso cancelado."

El volante, unido al cheque, tiene estampado un sello que lee así: "Banco de Ponce—Sucursal de Caguas—Received May 5, 1952." Además, a maquinilla, tiene escrito: "RAZÓN POR LO QUE SE DEVUELVE ESTE CHEQUE —LE DEVOLVEMOS SU REMESA PORQUE EL ÚNICO CHEQUE QUE LA ACOMPAÑA *NO TIENE FONDOS.*" Lo firma: "S. García."—Énfasis suplido.

Con esa prueba, que en algunos extremos esenciales resultó conflictiva, y por alegatos de las partes, quedó sometido para decisión el caso al Tribunal de Distrito. Éste dirimió el conflicto en contra del denunciado y dictó sentencia el 16 de setiembre de 1953 declarando culpable al denunciado, imponiéndole el pago de una multa de $1,127.30, o en su defecto, un día de cárcel por cada dólar que dejara de pagar, no excediendo la cárcel de 90 días.

Apeló Caballero al Tribunal Superior, Sala de Ponce, la cual, por los fundamentos de una razonada opinión confirmó la sentencia apelada. En esa opinión se hace el siguiente resumen de la prueba practicada ante el Tribunal de Distrito:

"El acusado le compró unas telas al señor Julio Gerardino, en el pueblo de Yauco, allá para el día 6 de marzo de 1952; entre el acusado y Gerardino no existían relaciones de clase alguna y por vez primera celebraron esta operación comercial. Cuando el acusado fue a pagarle el importe de la mercancía, se buscó los bolsillos y dijo que no encontraba un cheque, buscó en la gaveta del carro para ver si encontraba el cheque y tampoco lo encontró. Entonces el acusado le dijo a Gerardino que le enviaría 'el chequecito' desde Caguas. El perjudicado le entregó la mercancía para que se la llevara y le enviara el cheque porque él no se la iba a vender a crédito sin conocerlo. Pasaron algunos días y el acusado le envió un cheque como pago de la mercancía comprada por la suma de $563.65 (Exh. 1 del Pueblo). Gerardino depositó el cheque en el banco y fue devuelto porque el acusado no tenía fondos suficientes. En ocasiones posteriores, el perjudicado volvió a depositarlo y se lo devolvieron por la misma razón. El cheque a que hemos hecho referencia tiene fecha de 3 de abril de 1952, y es el Núm. 45, girado contra el Banco de Ponce, Sucursal de Caguas. Finalmente, después que el banco le devolvió varias veces al perjudicado el cheque, alrededor de 8 meses después, consultó Gerardino con su abogado y le entregó el caso. El día 5 de diciembre de 1952, el perjudicado requirió de pago al acusado, con carta certificada con acuse de recibo, la cual nunca contestó el acusado, así como tampoco pagó el importe del cheque. Esta carta la recibió el acusado. —Alrededor de 8 meses después de haber expedido el cheque el acusado, o sea, en el mes

de noviembre de 1952, el acusado radicó ante la Corte Federal una petición de quiebra voluntaria, acogiéndose a un plan (composition). Entre los acreedores cubiertos por el 'composition' está el perjudicado, Julio E. Gerardino, por el importe del cheque que nos ocupa. Para la fecha en que se radicó la acción criminal contra este acusado, o sea, el día 30 de marzo de 1953, ya el acusado se había acogido al procedimiento de quiebra voluntaria en la Corte Federal."

A solicitud de Caballero libramos un auto de certiorari para revisar la sentencia del Tribunal Superior.

En su alegato sostiene que el tribunal demandado erró al declararlo culpable porque: (1) el cheque a que se refiere la denuncia no fue presentado para su pago dentro de un tiempo razonable, de acuerdo con el artículo 187 de la Ley de Instrumentos Negociables, aprobada en 1930; (2) no se presentó prueba de que el acusado defraudó al librado, ni de que él no tuviera un crédito establecido en el banco girado para su pago; y (3) y (4) porque al iniciarse la causa criminal el peticionario estaba sometido a un procedimiento de quiebra en el que se había "librado una orden (composition) que incluía como acreedor al señor Gerardino."

El primer error apuntado no fue cometido. El cheque en cuestión aparece librado y remitido por correo a Julio E. Gerardino el 3 de abril de 1952. Éste lo depositó en los días 4, 10 y 30 del mismo mes en el Banco Crédito y Ahorro Ponceño, Sucursal de Yauco, para acreditarlo a su cuenta pero le fue devuelto, sin acreditarse, por ese banco. Fue presentado al cobro el 5 de mayo de 1952 al propio Banco de Ponce, Sucursal de Caguas, contra el cual se había librado. Este banco entonces lo devolvió por falta de fondos suficientes para su pago. El art. 187 de la Ley de Instrumentos Negociables—19 L.P.R.A. sec. 363—dispone que "el cheque *deberá presentarse al banco dentro de un tiempo razonable después de su expedición*, pues de lo contrario el librador quedará relevado de responsabilidad en cuanto al mismo, hasta el montante de la pérdida causada por la demora."

Este precepto de ley no tiene aplicación alguna en el presente caso criminal seguido contra el peticionario bajo un estatuto penal que hace delictivo el acto de extender y entregar un cheque, con el propósito de defraudar a otra persona, sabiendo el librador al hacerlo, que no tiene suficientes fondos o créditos establecidos en el banco contra el cual lo extiende para el pago total del cheque a su presentación. El propósito de defraudar es la médula del delito de expedir cheques sin fondos o créditos. *Valentín* v. *Torres*, 80 D.P.R. 463, 477 (1958) ; *Pueblo* v. *Cuevas*, 54 D.P.R. 301, 304 (1939) ; *People* v. *Payton*, 112 C.A.2d 648, 246 P.2d 978 (1952). Lo único que releva de responsabilidad criminal al librador es el pago del cheque *dentro del plazo* del requerimiento para el pago a que se refiere la sec. 4 de la citada Ley núm. 26. Claro que no se nos escapa de la mente la situación en que el cheque no ha sido pagado por exclusiva culpa u omisión de la persona a cuyo favor se libra o endosa o que ella haya sido advertida o tenga conocimiento de la falta o insuficiencia de fondos o créditos, ni por actos u omisiones del banco girado y aquellos casos en que las circunstancias concurrentes no revelan propósito alguno de defraudar. En tales casos el estatuto penal puede aparecer técnicamente infringido, pero no existe razón para imputar fraude al librador. Cf. *Pueblo* v. *Cuevas*, supra; *Pueblo* v. *Loubriel*, 55 D.P.R. 1004 (1939). Sin embargo, el presente caso no cae dentro de esa situación de excepción. El cheque fue presentado para su pago al banco girado el 5 de mayo de 1952, o sea, a los 31 días siguientes a su recibo por la persona a cuyo favor se libró el 3 de abril anterior. En los días 4, 10 y 30 del mismo mes de abril ésta trató de que se acreditara a su cuenta en otro banco. La razón para no lograrlo es obvia: Adrián Caballero, al librarlo en 3 de abril, ni en los días 4, 10 y 30 de abril de 1952 tenía fondos suficientes en el banco de Caguas para pagarlo. Así resulta de la relacionada estipulación y de su propio testimonio en corte.

■ Es cierto que el requerimiento personal para el pago se le hizo por el tomador del cheque el 5 de diciembre de 1952, unos seis meses después de haberse negado el pago por el banco girado. Pero para este requerimiento la Ley núm. 26 no señala término alguno. Este retraso en el requerimiento a quien benefició fue al propio Adrián Caballero que así disfrutó de un extenso período para el pago del cheque.

■ No vemos la aplicación racional que al mencionado art. 187 pueda dársele en el caso. Los supuestos principales para que entre en juego esta disposición son que el librador tenga fondos suficientes al emitir o entregar el cheque y que la causa para no pagarse haya sido la demora del tomador en presentarlo al pago. Como se estipuló el cheque *fue debidamente presentado para su pago* y Adrián Caballero *nunca tuvo fondos para su pago*. El señalamiento, en estas condiciones, carece de méritos. Los casos de *Álvarez* v. *National City Bank*, 46 D.P.R. 85 (1934) y *San Juan Dock Company* v. *Sancho Bonet*, 52 D.P.R. 94 (1937) tampoco tienen aplicación.

■ No se cometió el segundo error apuntado. La evidencia presentada y creída por el tribunal sentenciador es suficiente para demostrar la existencia del propósito de defraudar.

Cuando Caballero extendió el cheque en su extremo izquierdo hizo constar: "Saldo Fact. 146–15." Aceptó que "para el día 3 [de abril de 1952] no tenía fondos suficientes" para pagar el cheque y que no los tuvo en ninguna fecha posterior. Como afirma El Pueblo en su alegato ante nos "Él mejor que nadie pudo percatarse de esta situación. El buscar en sus bolsillos y en el carro fueron una mera comedia para ganarse la confianza del perjudicado. Si él hubiese actuado de buena fe no hay duda de que hubiese mandado el dinero enseguida y no que esperó algunos días para actuar en la forma en que lo hizo."

Defraudar, de acuerdo con la jurisprudencia de California, significa despojar a una persona de un derecho, bien

por medio del engaño o artificio, o por apropiación ilegal. *People* v. *Griffith*, 120 C.A.2d 873 (1954); 262 P.2d 355; *People* v. *Wilkins*, 67 C.A. 758 (1924); 228 Pac. 367. En el caso de *Pueblo* v. *Cuevas, supra,* a la página 306, se dijo:

"El fraude, sinónimo de engaño, consiste en la falsa representación, mediante palabras o por actos, de hechos materiales, por la cual una persona de razonable discreción y confianza es inducida a actuar a su perjuicio; en la supresión de hechos materiales que una persona está legalmente obligada a revelar a otra. Véanse: 1 Story Equity Jur., sec. 186, y C. 6; Bouvier's Law Dictionary, Vol. 1, pág. 843."

El tribunal no dio crédito al testimonio del acusado cuando manifestó que con el cheque le había remitido una carta a Gerardino fechada el 25 de marzo de 1952, en la que, en parte, le decía: "El cheque que le envío está fechado para el día 3 de abril debido a que no quiero que me coja el fin de mes con la cuenta muy floja favor que le agradeceré muy de veras." Gerardino declaró que nunca había recibido el original de esa carta, aunque sí había recibido el cheque por correo ordinario.

Carece de fundamento la alegación del acusado de que él compró a crédito la mercancía y que el cheque lo extendió para satisfacer una deuda preexistente. Si fue a crédito, ¿por qué tenía que hacer Caballero el "aguaje" (término usado por Gerardino) de buscar en sus bolsillos y en la gaveta de su carro un cheque para pagar la mercancía que trataba de "comprarle" a un comerciante desconocido y con quien no mantenía relación alguna? Lo que persuadió a Gerardino a entregarle mercancía por valor de $563.65, no obstante tratarse de una venta al contado, fue la engañosa promesa de pagarla con un cheque, envuelta en la melosa frase "Caramba, yo te voy a mandar ese chequecito de Caguas, porque a mí me gusta también esa gabardina que tienes ahí y te la voy a comprar también." El resultado fue evidente: Caballero se hizo de mercancía por valor de $563.65, más la ganancia que con ella realizaría en su nego-

cio; a cambio de ello recibió Gerardino un papelito de ocho pulgadas de largo por tres de ancho, con su nombre y la pretenciosa frase "Saldo Fact. No. 146–15", como recuerdo de una desafortunada experiencia con un habilidoso desconocido. ([3])

Si tales circunstancias no fueren suficientes para demostrar el propósito de defraudar al expedirse un cheque en pago del precio de una mercancía vendida al contado y con pleno conocimiento de la falta de fondos o créditos suficientes para hacerse efectivo a su presentación al banco para su cobro, como cuestión de derecho quedó probado ese propósito al no satisfacer Caballero el importe del cheque dentro del plazo de veinte días que se le concedió mediante el aviso o

([3]) Nuestro estatuto guarda silencio en cuanto al pago con cheques sin fondos de deudas preexistentes. No hace distinción entre obligaciones anteriores y obligaciones de presente o que se contraen en el momento de la expedición del cheque. La médula del delito, como antes expusimos, es el propósito de defraudar. Todo lo que hemos resuelto respecto a este delito es que si el que recibe el cheque tiene conocimiento de que su emisor no tiene fondos para pagarlo, no puede existir el propósito de defraudarlo, y que para determinar la existencia del elemento sicológico del delito, o sea el ánimo de engañar para obtener un lucro ilícito, deben tomarse en consideración las circunstancias concurrentes en cada caso. Véanse los casos de *Cuevas* y *Loubriel* antes citados. En cuanto a este punto, así como en lo referente a cheques posdatados, existe un evidente conflicto en la jurisprudencia continental basado en las diferencias de lenguaje de los distintos estatutos sobre la materia. Cf. *State* v. *Goerdes*, 48 N. J. Super. 293 (1957), 137 A.2d 100, 103; *Phillips* v. *State*, 24 Ala. App. 456, 136 So. 480; *State* v. *Lowenstein*, 109 Ohio St. 393, 142 N.E. 897, 35 A.L.R. 361; *People* v. *Nibur*, 238 App. Div. 233, 264 N.Y.S. 148, y la monografía publicada en 59 A.L.R.2d 1159. En el relacionado caso de *Goerdes*, citando a *State* v. *Lowenstein*, ante, se dijo:

"Cuando alguien entrega un cheque en pago de una deuda preexistente—past consideration—, si lo entrega a sabiendas de que no hay fondos en depósito para pagarlo, ¿por qué actúa en esa forma? Él actúa así porque espera derivar alguna ventaja. Él espera quizás engañar personas que están exigiéndole el pago; él espera que ellos crean que él ha pagado la totalidad de la deuda cuando [en realidad] él no ha pagado. . . .

"Era el propósito evidente de este estatuto el impedir la negociación de cheques falsos expedidos contra cuentas inexistentes o insuficientes para su pago. . . . A fin de proteger la negociación a crédito en la comunidad, se promulgó este estatuto creando un nuevo delito y estableciendo una nueva y particular regla de evidencia."

requerimiento que por carta certificada se le hizo el 5 de diciembre de 1952, toda vez que la sección 5 de la Ley núm. 26, en lo pertinente, dispone:

"La falta de pago, después de dicho aviso, por parte del que ha girado, firmado, endosado o entregado dicho cheque, giro, letra, u orden, *se considerará prima facie como propósito de defraudar.*" Énfasis suplido.

Contra esta presunción ninguna evidencia convincente aportó el acusado. El haberse presentado en quiebra voluntaria después de negarse el banco a pagar el cheque indicando en su relación de acreedores no asegurados que la dirección de Gerardino era "Juncos" cuando él sabía que era Yauco, y el haber vendido su establecimiento después de recibir el aviso (véanse Exhibits III y IV del acusado), son indicios adicionales de la existencia de su propósito de defraudar. —Cf. *State* v. *Price,* 97 S.E. 582, West Virginia (1918) 5 A.L.R. 1247, 1251.

Arguye también el peticionario que el tribunal de instancia cometió error al declararlo culpable "sin que hubiera prueba de clase alguna de que el acusado aun cuando no tenía fondos suficientes en el banco, tampoco tenía crédito en el banco para el pago del cheque."

Tampoco tiene razón en este punto. Es cierto que la inexistencia del crédito establecido para el pago del cheque no quedó demostrada por evidencia directa. Pero no es menos cierto que, considerada y analizada en conjunto la evidencia presentada por ambas partes, la ausencia o no tenencia de crédito establecido o abierto para su pago quedó comprobada, fuera de toda duda razonable, por suficiente evidencia circunstancial o indirecta.(⁴)

---

(⁴) Por aparecer incorporado en la definición del delito, en forma inseparable, el elemento de la falta de un crédito suficiente establecido para el pago total del cheque, debe alegarse en toda denuncia por infracción a la Ley núm. 26, no sólo la falta de fondos, sino la falta de crédito. *Commonwealth* v. *Bandy,* 291 Ky. 721, 165 S.W.2d 337 (1942); *Daily* v. *Commonwealth,* Ky. (1952), 248 S.W.2d 425; *People* v. *Markos,* C.D.C.A. (1956), 303 P.2d 363, 365. Si bien en la denuncia radicada,

La propia Ley núm. 26 en su sec. 3, dispone que la palabra "crédito" se interpretará en el sentido de un arreglo o entendido con el banco o depositario girado para el pago de dicho cheque, giro, letra u orden. Esta definición establece una clara distinción entre los términos fondos y créditos. El primero se refiere a sumas de dinero depositadas; el segundo a un acuerdo o convenio que obliga al banco a honrar los cheques, giros, letras u órdenes de pago que contra él se libren aun cuando no existan fondos en el banco pertenecientes al librador.

No existe discusión en cuanto al hecho de que el Banco de Ponce, Sucursal de Caguas, se negó a pagar el cheque. Ni en cuanto a que Caballero no tenía fondos suficientes en dicho banco para pagarlo, en 3 de abril de 1952, fecha en que lo emitió, ni en alguna época posterior alguna a esa fecha.

En la carta que, según él, le escribió a Gerardino, solamente le dice que no quiere que le coja "el fin de mes con la cuenta muy floja." No le habla de que ha hecho algún arreglo, entendido o convenio con el banco para pagarlo. En la estipulación mencionada las partes hicieron constar que el cheque "no pudo ser pagado" y que el mismo "no ha sido honrado." Se probó que fue devuelto varias veces por el banco, sin pagarlo.

Al prestar testimonio el acusado no alegó en su defensa que existía algún "arreglo o entendido con el banco para el pago de dicho cheque." Al declarar sobre su situación económica dijo que era tal que le había propuesto a Gerardino pagar a plazos el importe del cheque. Del contrainterrogatorio que le hizo el fiscal citamos lo siguiente:

---

en el presente caso el fiscal no hizo alegación específica al respecto, sin embargo, en la misma expuso hechos que demuestran la falta del crédito al alegar que el cheque no fue pagado por falta de fondos, ya que por disposición de la sec. 2 de esa ley, cuando el banco girado rehusa el pago por insuficiencia de fondos, o falta de crédito, ello "constituirá evidencia prima facie del conocimiento que tenía el girador de la insuficiencia de los fondos o falta de crédito."

"Fiscal: ¿Cuando Ud. expidió ese cheque Ud. tenía fondos en el banco?

"Testigo: Yo tenía cuenta en el banco.

"Fiscal: ¿Sabía Ud. si su cuenta cubría el cheque?

"Testigo: Cuando se le envió el cheque estaba bien claro en la carta que estaba floja la cuenta . . . para que él aguantase el cheque hasta . . . el día 3, ésa es la copia de la carta que está ahí cuando se le envió el cheque . . . él estuvo allá en mi negocio en Caguas, y yo todavía aguanté en enviarlo a ver si no tenía que . . .

.     .     .     .     .     .     .

"Fiscal: Y entonces, ¿Ud. saldó una factura con un cheque que no tenía fondos?

"Testigo: Bueno, en el momento en que se expidió."

Ése era el momento para haber demostrado, en su defensa, que a pesar de la no existencia de fondos, él tenía establecido un crédito con el banco para pagar ese cheque. ¿Por qué no le dijo a Gerardino, aceptando que éste lo visitara en el mes de marzo, que el cheque que libraría se pagaría por el banco conforme a un arreglo o entendido con el banco? Su testimonio demostró claramente que lo que en el banco tenía era solamente una cuenta "muy floja."

No podemos presumir que el banco se negó a honrar el cheque a pesar de la existencia de un arreglo o entendido con el acusado para pagarlo a su presentación. Tenemos que inferir lógicamente que si el banco se negó en varias ocasiones a pagarlo—como declaró el gerente del banco librado, y a quien el acusado nada le preguntó sobre la existencia de algún crédito en ese banco—fue porque el acusado no tenía fondos ni créditos establecidos allí para pagarlo. Tampoco puede presumirse que en el curso ordinario de los negocios un banco que se ha obligado, previo arreglo o entendido, a pagar determinado cheque, viole ese arreglo o entendido una y otra vez incumpliendo caprichosamente su obligación de satisfacerlo. Lo lógico es inferir que si rehusó el pago fue debido a la no existencia de fondos y de créditos.

El peticionario argumenta conjuntamente su tercer y cuarto señalamientos. Sostiene que fue errónea la declaración de culpabilidad porque la acción criminal se inició con posterioridad a la iniciación del procedimiento de quiebra y luego de haberse "librado una orden (composition) que incluía como acreedor al señor Gerardino."

El Exhibit IV del peticionario prueba que él *voluntariamente* acudió a la Corte de Quiebras en busca de un arreglo con sus acreedores bajo el Capítulo XI de la Ley de Quiebras, presentando su petición el 4 de diciembre de 1952, o sea, un día antes del requerimiento escrito que se le hizo para el pago del cheque; que entre sus acreedores no asegurados incluyó a "*J. E. Gerardino of Juncos, P. R., for the amount of $565.65*", que el arreglo propuesto en el procedimiento fue aceptado por una mayoría en número y cantidad de sus acreedores y confirmado el 25 de marzo de 1953, y que hizo el primer depósito conforme a los términos del arreglo que propuso. En la causa criminal no se acreditó que Gerardino fuera notificado del procedimiento de quiebra, ni que interviniera en el mismo en forma alguna. Al preguntarle el abogado del peticionario si tuvo conocimiento del procedimiento de quiebra contestó que no sabía "nada de eso" y que tuvo conocimiento del procedimiento por habérselo informado su abogado.

La denuncia por la expedición del cheque sin fondos fue presentada el 30 de marzo de 1953. La tesis del peticionario es que "la existencia de una resolución, plan, ajuste o arreglo que la Ley de Quiebra llama 'composition' impide la acción que se ejercitó y que dio motivo a la acusación o denuncia."

Sobre esta misma cuestión pasó el Tribunal Superior. Consideramos atinado su criterio al resolverla en los siguientes términos:

"A nuestro juicio, la corte sentenciadora no cometió error al declarar culpable al acusado estando éste sometido a un procedimiento de quiebra y habiéndose librado una orden (com-

position) que incluía como acreedor al señor Gerardino. La transacción realizada por el acusado y el perjudicado, que dio margen a la acción criminal que nos ocupa, fue efectuada mucho antes de acogerse el acusado al procedimiento voluntario de quiebra, aunque se perfeccionó el delito establecido en la Ley núm. 26, (supra), estando ya el acusado bajo la jurisdicción de quiebra de la Corte Federal. Sin embargo, la quiebra, y sus efectos jurídicos, no constituye defensa en este procedimiento criminal. La regla que invoca el apelante sobre la obligatoriedad de los términos del plan para el deudor y sus acreedores, se aplica únicamente a obligaciones contraídas por el deudor en el curso de sus negocios y no a actos delictivos realizados por el deudor con el propósito de defraudar a una persona. En este último caso, siendo el Pueblo de Puerto Rico el perjudicado y no Gerardino, el Estado podía iniciar la acción criminal independientemente de las obligaciones contraídas por el acusado y sus acreedores en el 'composition' celebrado en la Corte Federal. Un acusado no puede ampararse en un 'composition' para evitar un procedimiento criminal que ha sido iniciado por el Pueblo de Puerto Rico (Estado Libre Asociado) aún pudiendo afectar la sentencia el plan aprobado, pues la ley local dispone que 'cuando la violación de un derecho permite el ejercicio de ambas acciones, la civil y la criminal, el derecho a ejercer la una no impide el derecho de ejercer la otra.' *Artículo 2, Código de Enjuiciamiento Civil.* Se ha resuelto, así mismo, que la inmunidad del arresto y prisión del quebrado es extensiva solamente a procedimientos civiles por deudas que puedan ser condonadas (dischargeable) en un procedimiento de quiebra, *8 C.J.S., Sección 492, pág. 1361,* y no a deudas contraídas mediante fraude, las cuales puede reclamarlas el acreedor aun después de la rehabilitación del quebrado. *11 U.S.C.A. Sec. 35, pág. 306.*"

El peticionario sólo nos cita como autoridad el caso de *Ex parte Myers*, 237 Pac. 1026. Esta es una decisión de la Corte Suprema de Kansas, de fecha 11 de julio de 1925. Se trata de un procedimiento de hábeas corpus. El peticionario Myers se encontraba bajo arresto en una causa criminal autorizada por un estatuto de ese estado que castiga la expedición de cheques sin fondos y el cual, en cuanto a la definición del delito, es muy similar al nuestro. Pero el

estatuto de Kansas dispone que el acusado tendrá derecho a que la causa se sobresea si en cualquier momento anterior al juicio alega y prueba que dentro de los treinta días anteriores a la entrega del cheque tenía una cuenta en el banco girado y que el cheque fue librado sin intención de defraudar, y si, además, deposita en corte el importe del cheque y de las costas. Myers expuso en su petición que tenía derecho a su libertad porque en la vista preliminar de la causa criminal había probado la existencia de una cuenta en el banco girado y que el cheque lo había entregado a su tenedor en pago de un cargamento de manzanas bajo el entendido de que él depositaría los fondos en el banco al venderse las manzanas, pero que no pudo depositarlos debido a que un tiempo muy frío congeló dos terceras partes del cargamento de manzanas, y que había probado, además, que cuatro meses después había sido declarado quebrado en un procedimiento de quiebra voluntaria en el que se le concedió la liberación (discharge), que equivalía al pago total del cheque conforme a una ley local.

La Corte Suprema de Kansas se negó a excarcelar a Myers porque el magistrado que celebró la vista preliminar no venía obligado a creer y dar por buena su defensa y que era ante un jurado en el tribunal de distrito que él debía ventilarla en primera instancia y no ante la Corte Suprema del estado. Respecto al punto del efecto legal del procedimiento de quiebra sobre la causa criminal, a petición de ambas partes en el recurso de hábeas corpus, la Corte Suprema de Kansas, luego de hacer constar que en ese procedimiento el tenedor del cheque radicó su "proof of claim" acompañado del cheque sin fondos librado por Myers y que el juez de quiebras había admitido su reclamación, emitió una sentencia declaratoria en la que hizo constar que asumiendo la regularidad del procedimiento de quiebra y la ausencia de una controversia sobre fraude en el mismo que pudiera evitar la liberación del quebrado, el efecto legal de tal liberación conforme a la ley y la jurisprudencia del estado

era la del pago de la deuda a que se refería el cheque y que el peticionario Myers podía descansar en tal liberación como equivalente al pago o depósito en corte que disponía el mencionado estatuto del estado sobre cheques sin fondos.

Sin embargo, en el caso de *State* v. *Price*, 97 S.E. 582, West Virginia (1918), 95 A.L.R. 501, citado por el fiscal, y en el más reciente de *State* v. *Goerdes*, ante, resuelto por Nueva Jersey, en 20 de diciembre de 1957, los acusados fueron convictos finalmente a pesar de haberse acogido bajo la protección de la ley de quiebras. En el primero de estos casos—de quiebra involuntaria—se resolvió que el hecho de que el acusado esté al borde de la quiebra y luego sea forzado a la misma más bien tiende a reforzar la conclusión de que existía la intención de defraudar al momento de expedirse el cheque, pues nadie mejor que él puede conocer su situación.

Conforme al caso de *Myers*, corresponde a un acusado en estos casos probar que ante la corte de quiebra no se suscitó alegación de fraude contra la petición de liberación y que la obligación de pagar la deuda a que el cheque se refiere fue liberada en el procedimiento de quiebra. Este procedimiento no crea una incapacidad legal absoluta del quebrado para el pago de la deuda de un acreedor suyo. Lo que constituye la preferencia en el pago y que la ley de quiebras prohibe es el pagar el quebrado con los propios bienes que pasan o deben pasar al cuerpo de bienes de la quiebra. Él continúa con capacidad para obtener préstamos o crédito con el propósito específico de pagar la deuda de un acreedor en particular. —Collier's Bankruptcy Manual, sec. 60.08.

No son liberables, aunque puedan ser probables, y quedan subsistentes después de finalizados los procedimientos, y no obstante concederse la rehabilitación del quebrado, las deudas o reclamaciones creadas por el fraude real y positivo del quebrado que envuelva torpeza moral y maliciosa inten-

ción, por ser ésta una de las excepciones establecidas por la ley de quiebras en su sección 17 ([5]) *De Jesús* v. *Corte,* 44 D.P.R. 138, 144 (1932); Cf. *Rivera* v. *Gallardo, Tesorero,* 40 D.P.R. 813, 817 (1930).

En *United States* v. *Day,* 16 F.2d 328, se decidió que la expedición de cheques sin fondos constituye un delito que envuelve torpeza moral. Nuestro estatuto configura el acto delictivo tomando el propósito de defraudar como su ingrediente principal. ([6]) California, por el art. 476a de su Código Penal, castiga ese delito con pena de presidio máximo de 14 años y mínima de un año cuando el importe del cheque falso es mayor de $50. La doctrina y la jurisprudencia americanas lo incluyen dentro de la categoría de "Cheats; Frauds and False Pretenses." —Véanse Russel *On Crime,* vol. 2, pág. 1352, 11ma. ed. 1958; Fricke, *California Criminal Law,* 7ma. ed. 1959, págs. 335–343; Wharton's *Criminal Law,* t. 2, sec. 1428, 12ma. ed. 1959; Burdick, *The Law of Crime,* vol. 2, pág. 497, 22 Am. Jur., *False Pretenses,* secs. 56–72; 37 C.J.S., *Fraud,* sec. 9.

En el caso de *Guernsey-Newtom Co.* v. *Napier,* de la Corte Suprema de Washington, 1924, 275 Pac. 724, se deci-

---

([5]) Esta sección, en lo aquí pertinente, dispone:

"17. Deudas no afectadas por una liberación (discharge). a. La liberación en un procedimiento de quiebra exonerará al quebrado de todas sus deudas probables (provable debts), sean admitidas en totalidad o en parte, excepto: (1) . . . (2) cuando fueren responsabilidades por obtener dinero o propiedad valiéndose de falsas promesas o representaciones; . . . (3) . . . (4) o cuando fueren creadas por su fraude, abuso de confianza ... ."

([6]) Dice su sección 1ra.:

"Cualquier persona que, con el propósito de defraudar a otra, haga, extienda, endose o entregue un cheque, giro, letra u orden para el pago de dinero, a cargo de cualquier banco, u otro depositario, sabiendo al hacerlo, que el emisor o girador no tiene suficientes fondos o créditos establecidos en dicho banco o depositario para el pago total del cheque, giro, letra u orden, a la presentación del mismo, será culpable de delito menos grave, y convicta que fuere, será castigada con multa que no será menor del doble del importe de dicho cheque, giro, letra u orden, o a sufrir un día de cárcel, por cada dólar o fracción que deje de satisfacer, o ambas penas a discreción del tribunal."

dió que el tomador de un cheque sin fondos tenía una causa de acción para reclamar su importe no obstante haber acudido su librador a un procedimiento de quiebra en el cual él fue liberado, por tratarse de una responsabilidad contraída por medio del fraude y del engaño y respecto a la cual el procedimiento de quiebra no tenía efectos liberatorios por disposición expresa de la Ley de Quiebras. Al mismo efecto véase *Donahue* v. *Conley*, D.C.A. Cal. (1927), 258 Pac. 985.

Consideramos, por lo tanto, que el Tribunal demandado no cometió los errores señalados y que *debe anularse el auto expedido y sostenerse la sentencia impugnada.*